## Case No. 12,186a.

### RYAN et al v. GREEN.

[14 Betts, D. C. MS. 31.]

District Court, S. D. New York. Dec. 11, 1848.

SEAMEN—WAGES—LEAVING SHIP — CONTRACT FOR HOME RUN.

[Upon a contract for the run homeward from a foreign port at a stated gross sum, seamen may leave the ship as soon as she anchors in the harbor of her home port.]

[This was a libel by William Ryan and others against Thomas Green, master of the bark Leverett, for seamen's wages.]

Hiring for run distinguished from hiring for wages. When liability in former ceases, crew not bound to wait owner's decision as to disposition of vessel after arrival. Crew entitled to pay when vessel brought into harber and secured. Book of Dec. 14, p. 31.

BETTS, District Judge. By stipulation between the proctors, four suits commenced by different seamen are consolidated into one, and the proofs taken are to be applied according to the rights of the respective parties. The controversy turns on a mere punctilio, and it is manifest the suits are defended to defeat the proctor's demand of $3.75 costs on settlement of the demands, rather than any denial of the libellants' rights on the merits. The men were engaged in Havannah in August last to bring the vessel to New York, and were hired at specified prices by the run, —one at $10, two at $12, and one at $15. Two of them also interpose a claim for extra work on board the vessel before the voyage commenced. The barque arrived at quarantine on Wednesday evening, and at 1 p. m. the next day came to the city, and anchored on the Brooklyn side. Either the state of the wind was not favorable, or the owner was not prepared for her to haul into her berth that day; and next morning, at about 8 o'clock, the libellants left her. There is a disagreement in the testimony on the point of their leaving. The men testify that the captain told them they were free of the vessel, and the mate swears the men left without permission, and that the captain forbid them going, as the mate had done the night before. I do not think the result is varied if the evidence of the mate is relied upon as giving the true version of the case. The agreement was for a specific sum, and for a particular and limited service. Neither party was bound under that engagement to anything beyond its express terms. Seamen shipping for a voyage at pro rata wages are bound to the ship until she is in her berth and her cargo is discharged; and the owners and the ship are correspondingly bound to their seamen for a continuance of the pro rata wages during such services. A hiring for a run is a contract quite distinct from that. The mariner is then engaged for no more than to take the vessel to the place of destination, and, like a pilot or other navigator employed for a particular service, his liability to the vessel and hers to him ceases with the termination of that service. The same doctrine was adopted by the court in 1844 (Jackson v. Schuyler), which was a contract by the run to go the voyage in the frigate Kamschatka from New York to Cronstadt [unreported].

It is not intended in this case to consider the effect of a contract for the voyage at a

gross sum of wages. That mode of hiring may properly be attended with all the incidents of ordinary shipping agreements, because it is usually for the round voyage out and home. Jac. Sea Laws, 132, 133. The subject was regulated in France by express provisions of the Marine Code ("Hiring Seamen," art. 1); and the seaman hiring for the voyage was bound to remain with the ship until she was safely moored and wholly unladen. Pothier, Louage des Matr. Nos. 160, 172. Whether the same construction would be placed by our courts on an engagement in a foreign port for a voyage home may well admit of question, unless well ascertained usage applicable to it be shown. But it seems to me that putting the construction of this agreement upon the ordinary and plain import of the language, the run, the term for which the libellants contracted to serve, was the transit only from Havannah to New York. Such was manifestly its acceptation by the master and owner of the vessel, for no claim was set up that the libellants were bound to unload her also for that compensation, and the accommodations for lodging the men on board were taken away immediately on her arrival. The vessel was navigated to the port, and safely anchored. The master says because the proper papers authorizing him to go to the wharf were not obtained, whether she should remain at anchor for a short or long period depended upon the conveniency and election of the owner on his compliance with the regulations of the port as to permits, &c. The crew were under no obligations to await his decision, after it might be made up.

In my judgment, the libellants were entitled to their pay when the vessel was brought into the harbor and secured there, according to the orders of the master. Their engagement had then terminated, and the master and owner had no right to detain them with the ship or withhold the stipulated wages. The mate admits the agreement to pay two of the libellants $5 for extra work on the ship in Havannah before this contract. The owner was twice called upon by the libellants for their pay. He put them off on account of other engagements at the time, and they then placed their claims in the hands of proctors. Written notice was given the master of this by the proctors, and the effort to settle fell through because of the demand of retaining fees by the proctors. Whether the fee charged was right in principle or amount was a matter which could have been submitted to the court on taxation; and in refusing to pay the wages due, and compelling the libellants to collect them by suits, the master and owner were clearly in the wrong, and must accordingly bear the costs thus created by them.

The decree will be that the libellants recover $46.20, the amount of stipulated wages, after deducting hospital money, etc., with the addition of $5 extra, pay agreed to be made at Havannah, and interest from the commencement of the suit, with summary costs to be taxed in one suit.

The proper order for distribution of the amount amongst the libellants, according to their respective rights, will be entered.